IN THE

# United States Court of Appeals for the Federal Circuit

EVOLUTIONS FLOORING, INC., STRUXTUR, INC., DUNHUA CITY JISEN WOOD INDUSTRY CO., LTD., DALIAN SHUMAIKE FLOOR MANUFACTURING CO., LTD., FINE FURNITURE (SHANGHAI) LIMITED, DOUBLE F LTD., JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., ZHEJIANG DADONGWU GREENHOME WOOD CO., LTD., YIHUA LIFESTYLE TECHNOLOGY CO., LTD., LUMBER LIQUIDATORS SERVICES, LLC, JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., KINGMAN FLOORS CO., LTD., HUZHOU SUNERGY WORLD TRADE CO., LTD., DALIAN SHENGYU SCIENCE AND TECHNOLOGY DEVELOPMENT CO., LTD., JIANGSU SIMBA FLOORING CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, ZHEJIANG FUERJIA WOODEN CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD.,
*Plaintiffs*

BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION,
*Plaintiffs-appellants*
v.
UNITED STATES
*Defendant-Appellee*

Appeal from the United States Court of International Trade
in case no. 21-00591 Judge Timothy M. Reif

OPENING BRIEF OF PLAINTIFFS-APPELLANTS BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD

# CORPORATION

_____

Irene H. Chen, Esq.
VCL Law LLP
1945 Old Gallows Rd., Ste 260
Vienna, VA  22182
Tel: (301) 760-7393
Email:  ichen@vcllegal.com

Mark Lehnardt, Esq.
Davis & Leiman, PLLC
1025 Connecticut Ave., N.W., Ste 1012
Washington, DC  20036
Tel : (202) 642-4850
Email : mlehnardt@dltrade.com

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2026-1112 |
| **Short Case Caption** | Evolutions Flooring, Inc. v. US |
| **Filing Party/Entity** | Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/12/2025

Signature: /s/ Irene H. Chen

Name: Irene H. Chen

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Baroque Timber Industries (Zhongshan) Co., Ltd. | | Samling Global Limited, Lingui Developments Berhad, and Glenealy Plantations (Malaya) Berhad |
| Riverside Plywood Corporation | | Samling Global Limited, Lingui Developments Berhad, and Glenealy Plantations (Malaya) Berhad |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Andrew T. Schutz | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |
| Francis J. Sailer | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |
| Michael S. Holton | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)  ☑ No  ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Table of Contents

**STATEMENT OF RELATED CASES**....................................................................**6**

**JURISDICTIONAL STATEMENT**.........................................................................**6**

**STATEMENT OF THE ISSUES** ...........................................................................**7**

**STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES ..9**

**SUMMARY OF ARGUMENT**................................................................................**15**

**ARGUMENT** ...........................................................................................................**18**

I.   STANDARD OF REVIEW.....................................................................................18

II.  COMMERCE'S CALCULATION OF THE BENCHMARK PRICE FOR PLYWOOD
APPLICABLE TO BAROQUE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE OR
OTHERWISE IN ACCORDANCE WITH LAW ...............................................................19

   A.  COMMERCE IS REQUIRED TO SELECT THE MOST PRODUCT-SPECIFIC DATA
   FOR THE CALCULATION OF BENCHMARKS ..........................................................20

   B.  RECORD EVIDENCE ESTABLISHES THAT PLYWOOD PRICES ARE INFLUENCED
   BY BOTH SPECIES AND GRADE OF PLYWOOD AND THAT BAROQUE'S PLYWOOD
   INPUTS WERE LOW-GRADE, LOW-PRICED EUCALYPTUS .......................................23

   C.  THE DATA MOST PRODUCT-SPECIFIC TO BAROQUE'S PLYWOOD PURCHASES
   IS ITTO C/CC Data……………………………………………………….…………27

   D.  COMMERCE'S CONCLUSION THAT BAROQUE FAILED TO PROVIDE SUFFICIENT
   DOCUMENTATION OF ITS GRADE C/D PLYWOOD PURCHASES IS UNSUPPORTED BY
   SUBSTANTIAL EVIDENCE ...................................................................................27

   E. THE CIT ERRED IN UPHOLDING COMMERCE' CALCULATION OF THE
   BENCHMARK PRICE FOR PLYWOOD FOR BAROQUE ... ……………………………30

III. THE COURT OF INTERNATIONAL TRADE ERRED IN AFFIRMING COMMERCE'S
USE OF THE 17 PERCENT VAT RATE IN BENCHMARKS ............................................30

IV. THE CIT ERRED IN CONCLUDING THAT COMMERCE'S APPLICATION OF AFA IN
FINDING USE OF THE EBCP BY BAROQUE IS SUPPORTED BY SUBSTANTIAL
EVIDENCE AND IN ACCORDANCE WITH LAW .........................................................34

**CONCLUSION**.......................................................................................................**39**

# Table of Authorities

## Cases

*Archer Daniels Midland Co. v. United States*, 779 F. Supp. 3d 1349, 1357 (Ct. Int'l Trade 2025).......................................................................... 21, 29

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1332 (2018)...................................................................................21

*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020)...............................................................................18

*Changzhou Trina Solar Energy Co. v. United States*, No. 17-00198, Slip Op. 19-137, 2018 WL 5856438,..........................................................37

*China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1355 (Ct. Int'l Trade 2003) ..................................................................................39

*China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1355 (Ct. Int'l Trade 2003) ..................................................................................39

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)..........................................18

*Dalian Meisen Woodworking Co. v. United States*, No 20-00110, 2022 WL 1598896 at *8-9 (Ct. Int'l Trade May 12, 2022)..................................38

*Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1273 (Fed. Cir. 2012)................21

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970)......19

*Huayin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) .........................................................................................19

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1356 (CIT 2015) ......23

*Risen Energy Co. v. United States*, No. 20-03912, 2022 WL 1499716 (Ct. Int'l Trade May 12, 2022). .....................................................................38

*SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) .....18

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).............................................................................19

*Zhejiang Junyue Standard Part Co. v. United States, No. 20-00102, 2022 WL 1701942* (Ct. Int'l Trade May 19, 2022); ............................................38

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i).......................................................... 18, 30

19 U.S.C. § 1677(5)(E)(iv). ...............................................................7, 21

19 U.S.C. § 1677m(d) ............................................................. 17, 34, 36

19 U.S.C. § 1677m(d). .................................................................. 32, 39

28 U.S.C. § 1295(a)(5) .........................................................................6

28 U.S.C. § 1581(c)(2018), .................................................................6

28 U.S.C. § 2107(b) .............................................................................6

**Administrative Decisions**

*Alloy and Certain Carbon Steel Threaded Rod from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 8821 (Feb. 18, 2020) ................................................... 32, 33

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into* Modules, *From the People's Republic of China*, *Final Results of Countervailing Duty Administrative Review,* 83 Fed. Reg. 34828 (July 23, 2018) .............................22

**Rules**

Fed. R. App. P. 4(a)(1)(B) ...................................................................6

**Regulations**

19 C.F.R. § 351.511(a)(2)(i) ...........................................................7, 21

19 C.F.R. § 351.511(a)(2)(ii). ........................................................ 19-21

19 C.F.R. § 351.511(a)(2)(iii) ..............................................................21

19 C.F.R. § 351.511(a)(2) .................................................................7, 8

19 C.F.R. § 351.511 .............................................................................20

19 CFR 351.511(a)(2)(ii) ......................................................................20

This brief is submitted on behalf of Riverside Plywood Corp. ("Riverside"), and its cross-owned affiliate Baroque Timber Industries (Zhongshan) Co., Ltd. ("Baroque Timber") (collectively "Baroque") in the appeal of the decision by the Court of International Trade (the "CIT") in *Evolutions Flooring, Inc. v. United States*, Judgment (Ct. Int'l Trade, August 29, 2025).

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceedings in the lower court has previously been before this Court or any other appellate court. No other appeal is pending in this Court or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

This action is an appeal from the final judgment of the U.S. Court of International Trade ("CIT") in *Evolutions Flooring, Inc. v. United* States, Ct., No. 21-00591 (Ct. Int'l Trade Aug. 29, 2025) (Appx32-34) and Slip Opinion 25-33 (Ct. Int'l Trade Mar. 27, 2025) ("*Evolutions Flooring*"). Appx1-31. The CIT had jurisdiction pursuant to 28 U.S.C. § 1581(c)(2018), which grants that court exclusive jurisdiction over "any civil action commenced under section 516A of the Tariff Act of 1930." This Court has jurisdiction to review decisions of the CIT pursuant to 28 U.S.C. § 1295(a)(5). This appeal by Baroque was timely initiated pursuant to 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B) by notice of appeal

filed on October 28, 2025, within 60 days of the CIT's final judgment in

*Evolutions Flooring*. This appeal is from a final order or judgment by the CIT that

disposes of all parties' claims.

## STATEMENT OF THE ISSUES

**ISSUE 1:**   Under 19 U.S.C. § 1677(5)(e)(iv) and 19 C.F.R. §

351.511(a)(2), Commerce must select the most product-specific benchmark for

calculating subsidies in a less than adequate remuneration ("LTAR") determination.

Here, record evidence (witness statements) established Baroque's plywood inputs

were Grade C/D, and thus that Grade C/CC ITTO data should be used, not more

general UN Comtrade data, which includes different types, different species, and

higher grades of plywood with materially higher prices.  Was Commerce's weight-

averaging of Grade C/CC ITTO data and UN Comtrade data in calculating the

benchmark for plywood applicable to Baroque's inputs unlawful and unsupported

by substantial evidence?

**Short Answer:**   Yes; 19 U.S.C. § 1677(5)(e)(iv) directs Commerce to

consider prevailing market conditions, including price and quality, in connection

with the selection of benchmarks, and Commerce's regulation 19 C.F.R. §

351.511(a)(2), requires that Commerce make "due allowance for factors affecting

comparability." Commerce failed to address record evidence demonstrating that

Grade C/CC ITTO data was the most product specific data to Baroque's eucalyptus plywood – a lower grade of plywood at a significantly lower price.

**ISSUE 2:**     If Commerce believes there is a deficiency in a response, it must identify the deficiency and provide the submitting party an opportunity to remedy the deficiency. Further, in determining a benchmark, Commerce adds Value Added Tax (VAT) to benchmark prices to calculate the full benchmark price. Baroque reported, with documentation, paying 16 percent VAT on the purchases of inputs for LTAR after May 1, 2018, because of a reduction from the normal VAT rate from 17 percent.  The Government of China ("GOC") reported the VAT rate for the year 2018 as 17 percent, without explaining the May 2018 change. Commerce did not, however, identify any deficiency in Baroque's submission or allow Baroque an opportunity to explain why it reported a 16 percent VAT rate beginning in May 2018. Commerce thus countervailed more value based on a 17 percent VAT throughout 2018. Did Commerce err by using 17 percent for the entire POR without providing Baroque an opportunity to explain?

**Short Answer:**     Yes. Commerce's explanation that it applied a 17 percent VAT rate for the period of review, because Baroque failed to offer an explanation why its reported VAT rate differed from the GOC's reported VAT rate is not supported by substantial evidence or otherwise in accordance with law. After Baroque reported the change in its VAT rate from 17 percent to 16 percent in May

2018, Commerce never provided Baroque an opportunity to explain the change in VAT rates, or requested clarification from the Government of China, unlike in other proceedings before Commerce. Commerce may not rely on Baroque's alleged lack of an explanation when it never sought clarification.

**ISSUE 3:** Commerce has generally accepted as competent evidence that an exporter did not benefit from the Export Buyer's Credit Program ("EBCP") declarations from the exporter's customers that they did not participate in the EBCP. Commerce has accepted such declarations despite declaring the Government of China ("GOC") to be uncooperative in relation to this program. Here, Commerce ignored Baroque's customer declarations, and imputed benefit based on the application of adverse facts available (AFA) for the GOC's failure to cooperate. Is Commerce's decision without support of substantial evidence and contrary to law as arbitrary and capricious?

**Short Answer:** Yes. Commerce ignoring the declarations and failing to follow its general practice is arbitrary and capricious and thus without substantial evidence support and contrary to law.

## STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES

This appeal arises from the eighth administrative review of the countervailing duty ("CVD") order on multilayered wood flooring ("MLWF") from the People's Republic of China, covering the period January 1, 2018, through

December 31, 2018 ("POR"). Baroque challenges certain aspects of the CIT's opinion issued on March 27, 2025, and subsequent judgment concerning the Final Results of Commerce's 2018 administrative review of MLWF.

On February 6, 2020, the U.S. Department of Commerce ("Commerce") initiated the administrative review. See *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 6,896 (Feb. 6, 2020). Commerce selected Riverside Plywood Corporation and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. as mandatory respondents. Commerce issued its initial CVD questionnaire on May 14, 2020.

Riverside and its cross-owned affiliate Baroque responded to Commerce's affiliation, initial, and supplemental questionnaires in the underlying administrative review. Baroque also submitted factual information relevant to Commerce's benchmark calculations for plywood, veneer/backboard, fiberboard, paint/stain, and adhesive/glue inputs.

On April 23, 2021, Commerce published its *Preliminary Results*, assigning Baroque a preliminary CVD rate of 9.36 percent. 86 Fed. Reg. 21,693 (Apr. 23, 2021) and accompanying Decision Memorandum.  In the *Preliminary Results*, Commerce constructed the benchmarks for veneers, plywood, fiberboard, glue and paint by adding a 17 percent VAT tax to the prices throughout the 2018 period of review. In the *Preliminary Results*, Commerce weight-averaged the International

Tropical Timber Organization ("ITTO") data, which consisted of certain species of plywood, and UN Comtrade data, which covered multiple Harmonized Tariff Schedule categories, including species and grades, of plywood, for Baroque's plywood benchmark. APPX509-512.

In its June 2, 2021 case brief, Baroque challenged certain aspects of the *Preliminary Results*, arguing that: (1) Commerce should adjust its calculation of the benchmark for plywood by using ITTO grade C/CC prices for "Pine Plywood EU Market" and "Peru Plywood Market" only; (2) the VAT rate applied to benchmark prices should be 16 percent for May through December 2018; and (3) Commerce should not countervail the Export Buyer's Credit Program ("EBCP"). APPX952-998.

On October 27, 2021, Commerce published the *Final Results*, assigning Baroque a final CVD rate of 9.18 percent. 86 Fed. Reg. 59,362 (Oct. 27, 2021) ("*Final Results*") and accompanying Issues and Decision Memorandum (Final IDM). In the *Final Results*, Commerce rejected Baroque's challenges to, inter alia: (1) the plywood benchmark; (2) the VAT rate applied to benchmarks; and (3) the EBCP determination. APPX999-1093.

In the *Final Results*, Commerce rejected Baroque's argument that Commerce should only use ITTO data to calculate its plywood benchmark, because its plywood purchases are "of a lower grade plywood. Baroque had

submitted expert witness statements testifying that Baroque's plywood inputs, made from eucalyptus, were only grade C/D. Commerce instead weight-averaged data from the ITTO and UN Comtrade datasets to calculate a benchmark price for the provision of plywood for LTAR, claiming Baroque had failed to provide "sufficient documentation" in support of its claim that its plywood purchases consisted of only grade C/D plywood. APPX1054-1062. Despite Riverside's argument, Commerce found that "Riverside did not provide any official company documentation to demonstrate that its plywood input is limited to a particular grade." Commerce concluded that Baroque's witness statements were "reflective of the industry as a whole" but "do not tie" to any of Baroque's documentation. *Id.*

Commerce also rejected Riverside's argument that Commerce should revise the benchmark VAT rate for purchases of veneers, plywood, fiberboard, glue and paint beginning in May 2018. APPX1079-1080. Riverside argued that Commerce had found in a separate antidumping duty proceeding (*Alloy and Carbon Steel Threaded Rod*), that the appropriate VAT rates were 17 percent prior to May 1, 2018, and 16 percent on and after May 1, 2018. *Id.* Commerce rejected the argument, however, stating that the "GOC reported that 17 percent VAT was applicable to purchases of veneers, plywood, fiberboard, glue and paint during 2018" and "Riverside provided no explanation as to why the VAT rate for certain

purchases during the POR differed from the VAT rate provided in the GOC's response." *Id.*

Finally, Commerce determined to apply adverse facts available (AFA) to determination Baroque's use of EBCP based on the GOC's incomplete and unverifiable responses with regard to the administration of loans from the Export Import Bank of China. APPX1011-1031. Breaking from prior practice and judicial findings, Commerce also determined that it could not rely on Baroque's declarations from customers claiming non-use of the EBCP because the primary entity possessing such supporting records is the Export Import Bank of China. *Id.*

On December 23, 2021, Baroque filed an appeal at the U.S. Court of International Trade ("CIT") challenging Commerce's rejection of Baroque's plywood benchmark, VAT, and EBCP arguments in the *Final Results*.

On March 27, 2025, the CIT sustained Commerce's Final Results in part and remanded it in part. APPX1-31. Specifically, the CIT sustained (1) Commerce's calculate the plywood benchmark by weight-averaging UN Comtrade data and the International Tropical Timber Organization ("ITTO") methodology; (2) Commerce's application of a 17 percent VAT rate to benchmark prices throughout the POR; and (3) Commerce's application of AFA as applied to Baroque regarding use of EBCP. The CIT, however, granted Commerce's voluntary remand regarding arguments raised by consolidated plaintiff Jiangsu Senmao to (1) further

evaluate AFA as applied to EBCP use by co-plaintiff Jiangsu Senmao; and (2) address Commerce's voluntary remand to correct an inadvertent calculation error relating to average unit values for veneer/backboard inputs.

On July 9, 2025, Commerce filed its Final Results of Redetermination Pursuant to Court Remand. On remand, Commerce determined – unlike its decision regarding Baroque's customers non-use certificates – that Senmao's submission of non-use certificates from its U.S. customers was sufficient to establish non-use of the EBCP for purposes of the remand proceeding. Commerce also corrected an inadvertent error in calculating the average unit values for Baroque's backboard veneer purchases under the veneers-for-LTAR program. Commerce revised the subsidy rates accordingly. APPX1093-1111. Commerce recalculated Baroque's overall subsidy rate from 9.18 percent to 9.02 percent ad valorem, and recalculated Jiangsu Senmao's and the non-selected companies' rates as well.

On August 29, 2025, the CIT sustained Commerce's remand redetermination in full and issued a final judgment. The CIT found that Commerce's redetermination complied with the remand instructions and was supported by substantial evidence.

Baroque now appeals those aspects of the CIT's March 27, 2025, opinion that sustained Commerce's plywood benchmark methodology, VAT determination, and application of AFA with respect to Baroque and EBCP.

## SUMMARY OF ARGUMENT

The Court of International Trade erred in sustaining Commerce's final results because Commerce's determinations regarding the plywood benchmark, VAT rate, and application of adverse facts available ("AFA") with regard to the EBCP are not supported by substantial evidence and were not in accordance with law.

First, Commerce wrongly inflated the plywood benchmark by including undifferentiated UN Comtrade data that included high-priced grades of plywood not used by Baroque in its purchases of plywood, despite record evidence demonstrating that plywood grades materially affect price. Record evidence established that A/B plywood used in high end furniture was significantly more expensive than the low-grade eucalyptus plywood Baroque purchased, which industry experts viewed as C/D grade plywood. Commerce's conclusion that all different grades of plywood could be used to produce subject merchandise ignored Baroque's actual purchases and thus applied an unreasonable interpretation of the record evidence.

Second, Commerce's decision to apply a 17 percent VAT rate throughout the period of review is unsupported by substantial evidence. In the *Final Results*, Commerce relied on the GOC's reporting of the 17 percent VAT rate for the year 2018, despite the submission by Baroque of record invoices and worksheets reflecting its payment of a 16 percent VAT rate beginning in May 2018. Commerce claims in the *Final Results* that "{Baroque} provided no explanation as to why the VAT rate for certain purchases during the POR differed from the VAT rate provided in the GOC's response." Appx 1079-1080. Despite Commerce issuing numerous supplemental questionnaires to Baroque, however, Commerce never asked Baroque to provide further explanation why it only paid a 16 percent VAT tax. Further, Commerce wrongly claims that there is no evidence supporting Baroque's assertion, ignoring Baroque's unrefuted documentation establishing that it paid a 16 percent VAT tax. These errors render Commerce's determination unsupported by substantial evidence.

Finally, the CIT erred in finding that Commerce's use of AFA regarding Baroque's use of the EBCP is supported by substantial evidence and in accordance with law. Both Baroque and consolidated plaintiff Jiangsu Senmao had challenged Commerce's use of AFA with regard to the EBCP in the CIT appeal. Commerce requested a voluntary remand to reconsider its application of AFA regarding Jiangsu Senmao's use of the EBCP because it had submitted a full set of customer

non-use certifications, but not for Baroque as it had only submitted a sample certification set. The CIT noted that it previously upheld Commerce's determination to fill the gap of missing record information from lack of GOC cooperation when all of a respondent's U.S. customers provide EBCP non-use declarations.

The CIT erred in affirming Commerce's decision with respect to Baroque because Baroque had provided evidence of non-use of the EBCP per the standard set by Commerce. Commerce's questionnaire asks only for an explanation, and Baroque went beyond what was requested by Commerce, reporting that it had contacted all of its customers, confirmed non-use, and obtained certifications from a sample of customers. Commerce did not ask for customer certifications or any specific documentation establishing non-use. And to the extent that Commerce was not satisfied by Baroque's explanation and sample certifications, Commerce failed to identify a deficiency in Baroque's response or provide Baroque an opportunity to remedy any deficiency, as required under 19 U.S.C. § 1677m(d) before applying AFA.

Because these determinations disregard material record evidence, rest on unsupported assumptions, and are otherwise contrary to law, the CIT judgment should be reversed, and this case should be remanded to Commerce to adjust the plywood benchmark, use the 16 percent VAT rate for May through December

2018, and either not to apply AFA to determine Baroque's participation in the EBCP or to allow Baroque an opportunity to remedy any deficiency Commerce continues to believe exists.

## **ARGUMENT**

### I. **Standard of Review**

This Court applies the same standard of review as the Court of International Trade. 19 U.S.C. § 1516a(b)(1)(B)(i). Under that standard, Commerce's determinations must be held unlawful if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Huayin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court must review the record as a whole, considering not only evidence that supports Commerce's determination but also "whatever in the record fairly detracts from the substantiality of the evidence." *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (quoting *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).

The substantial evidence standard does not permit Commerce to rely on conjecture, assumption, or isolated pieces of evidence divorced from the record as a whole. See, e.g., *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013). Nor may Commerce disregard record evidence that detracts from its conclusion without reasoned explanation. An agency must demonstrate that it has taken a "hard look" at the relevant evidence and has engaged in reasoned decision-making. See *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970).

Under these principles, the Court shall reverse or remand where Commerce's findings lack record support, where its reasoning fails to address material evidence, or where it departs from statutory requirements governing subsidy calculations and adverse inferences.

## II. Commerce's Calculation of the Benchmark Price for Plywood Applicable to Baroque is not Supported by Substantial Evidence or Otherwise in Accordance with Law

Commerce's calculation of the benchmark price for plywood applicable to Baroque is not supported by substantial evidence or otherwise in accordance with law because Commerce improperly included less-specific, high value data, with benchmark data specific to the plywood input Baroque purchased. Commerce stated that when the record presents more than one commercially available world market price, 19 CFR 351.511(a)(2)(ii) requires that it "average such prices to the

extent practicable." *Id.* But Commerce ignored the overriding regulatory directive to select a benchmark that is product-specific, making "due allowance for factors affecting comparability." 19 CFR 351.511(a)(2)(ii). Thus, Commerce's benchmark decision should be remanded.

## A. Commerce is Required to Select the Most Product-Specific Data for the Calculation of Benchmarks

The applicable statute and regulations require Commerce to select the most product-specific data for the calculation of benchmarks to determine whether goods were sold for "less than adequate remuneration." 19 C.F.R. § 351.511.

Congress set how Commerce determines adequacy of remuneration - "in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review":

> (iv)   in the case where goods or services are provided, if such goods or services are provided for less than adequate remuneration, and in the case where goods are purchased, if such goods are purchased for more than adequate remuneration.
>
> For purposes of clause (iv), the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale.

19 U.S.C. § 1677(5)(E)(iv). Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase

or sale. *Id.* Although Commerce is not required to rely on all of these factors, Commerce is required to consider all of them. *Archer Daniels Midland Co. v. United States*, 779 F. Supp. 3d 1349, 1358 (Ct. Int'l Trade 2025).

Commerce determines the amount of the subsidy by comparing remuneration actually paid with a market-determined price for the goods or services under "a three-tiered hierarchy" employed by Commerce "to determine the appropriate remuneration benchmark." *Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1332 (2018). Tier 1 benchmarks include actual transaction prices in the country in question. 19 C.F.R. § 351.511(a)(2)(i). If no such transactions exist, Tier 2 benchmarks include world market prices for the goods in question. 19 C.F.R. § 351.511(a)(2)(ii). Last, if neither Tier 1 or Tier 2 benchmarks are available, Commerce measures the adequacy of the remuneration by assessing whether the price is consistent with market principles. 19 C.F.R. § 351.511(a)(2)(iii); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1273 (Fed. Cir. 2012).

Commerce here determined a Tier 2 benchmark. For a tier 2 benchmark, where there is more than one commercially available world market price, Commerce generally averages such prices, making due allowance for factors affecting comparability. *See* 19 C.F.R. § 351.511(a)(2)(ii).

Under these statutory and regulatory requirements, Commerce's selects the narrowest category of data to determine benchmarks. For example, in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China* ("*Solar Cells from China*"*),* Commerce stated that it "normally {relies} on data reflecting the narrowest category of products encompassing the input product." *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into* Modules, *From the People's Republic of China*, *Final Results of Countervailing Duty Administrative Review,* 83 Fed. Reg. 34828 (July 23, 2018) and accompanying Decision Memorandum at Comment 3 (Provision of Aluminum Extrusions for LTAR) (July 12, 2018). There, where Commerce sought a benchmark for aluminum frames, it evaluated two data sets, selecting "annual IHS Markit data (which reflects prices for aluminum frames, while the Comtrade data encompasses a broader range of aluminum products)." *Id.*

Further, in previous multilayered wood flooring ("*MLWF*") administrative reviews, Commerce confirmed that it selects the narrowest category of data:

> While we generally agree with the petitioner that perfection is not required when selecting benchmark information…Commerce's practice is normally to rely on data reflecting the narrowest category of products encompassing the input product. The record contains several HS categories of plywood which are considered comparable to the plywood input used by the mandatory respondents. Moreover, the petitioner's contentions of benchmark gamesmanship are unfounded. Record information related to wood types and species stands in favor of selecting benchmarks which, in accordance with Commerce

practice are the narrowest category of products encompassing the input product used by the respondents.

*Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review;* 85 Fed. Reg. 76,011 (Nov. 27, 2020), and accompanying IDM at Cmt. 6. Selecting the narrowest, or most product-specific category of data is consistent with Commerce's obligation to calculate CVD rates as accurately as possible. *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1356 (CIT 2015).

### B. Record Evidence Establishes That Plywood Prices Are Influenced by Both Species and Grade of Plywood and that Baroque's Plywood Inputs Were Low-Grade, Low-Priced Eucalyptus

Record evidence submitted in the administrative review established that plywood prices are influenced by species and grade. Plywood is divided into four principal grades-A, B, C, and D, and grade is one of the most significant determinants of price. APPX318-344. The information contained in Exhibit S-2a to S-2k in Riverside Plywood's Second Benchmark Submission establish the importance of grade in plywood by two expert statements. *See id*. APPX750-769.

The first expert explained how pricing differences are affected by species and grade of plywood and described Baroque's plywood inputs "based upon a review of pictures of Baroque's plywood … and interviews with employees":

6. Unlike in other industries or applications (such as wooden cabinets or wooden furniture), the plywood used in MLWF is of a low-quality because it is used for the core of the product, which cannot be seen by the consumer,

7. Based upon my industry experience, most Chinese producers of MLWF choose low grade, fast growing wood species, such as poplar or eucalyptus, to produce plywood for MLWF;

8. There are several factors that influence the price of plywood. These are species type, grade (A,B,C,D), overall thickness and size. The two biggest influences on price are species type and grade, with grade being the most important. There is a significant price difference between Grade AB plywood and Grade CD plywood.

9. Different wood species types have significantly different prices due to desirability of appearance and growth. Slow growing hardwoods – like oak, cherry and walnut that are desired for their appearance and hardness for use in cabinetry and furniture – are much more expensive than fast growing woods like eucalyptus which is used almost exclusively for non-decorative, structural applications. For example, eucalyptus may be priced as low as one-third or one-fourth of any other popular hardwood (e.g., see Attachment 1: ITTO Report Vol 24, page 17).

10. And for the same type of wood, different grades of plywood vary in cost, and therefore in market prices;

11. Grade of plywood is largely determined by the top face of the plywood, and inner plies are always low, C or D grades (Attachment 2: PS-1-2010-APA, pages 16-17, Tables 2 and 3);

12. I have requested materials and supporting documents for the plywood Baroque Timber Industries (Zhongshan) Co., Ltd. ("Baroque Timber") used in producing MLWF;

13. I have examined and analyzed the well-recognized American Plywood Association (APA) Structural Plywood Standard (Attachment 2: PS-1- 2010-APA, pages 16-21); Some pictures on which I have relied to make judgment are provided in (Attachment 3: Veneer grade of same species);

14. *I believe the plywood Baroque Timber used in production of MLWF is Grade D or Grade C/D plywood based upon a review of pictures of Baroque's plywood (Attachment 4: Photos of Eucalyptus veneer used by Baroque Timber) and interviews with employees;*

15. Reviewing the Harmonized Tariff Schedule ("HTS") categories for plywood that were placed on the record – i.e., 4412.33, 4412.39 and 4412.32 – the only characteristic accounted for in these categories is species (there is a reference to the per ply thickness but not overall thickness of the plywood);

16. These HTS categories for plywood therefore represent basket categories containing all grades of plywood including expensive, Grade A decorative plywood used for cabinets and furniture as well as low end, Grade D plywood

*Id.* (emphasis added) APPX750-753.

The second expert similarly identified Baroque's plywood inputs as "lower grade C and D":

1.2 Type and relative quality of hardwood veneers used as core veneer for plywood that, in turn, *is used in Baroque* MLWF:

- Baroque's production in China uses low quality and low-priced plywood made from eucalyptus veneers for the core of its MLWF.

**-** *Lower quality (grades C&D) veneers are mainly used* – these feature low prices as compared to grades A&B veneers as well as tropical veneers: …

1.3 *Eucalyptus is one of the lowest priced hardwood species in the world (especially in China and Brazil) for sawnwood as well as veneer production, where mainly lower grade C and D veneers are produced and used as core veneers in plywood production.* As the trees are typically harvested at young ages (4-5 years in China and 7-10 years in Brazil) with very small diameters (as little as 4-5 inches in diameter), there is no opportunity for the tree to become large enough and free of breaches to produce A or B grade veneers (without knots). As a result, the relative quality of the eucalyptus tree produces lower quality veneers (almost exclusively C and D grade veneers

that are typically used as core veneers in plywood. I have seen this from my own experience when I have visited eucalyptus veneer plants in Guangxi Province, China.

Id. (emphasis added) APPX754-769.

The two experts engaged by Baroque established the following facts:

- That there are species type, grade (A, B, C, and D) and that the biggest influences on price are species type and grade.

- There is a significant price difference between Grade AB plywood and Grade CD plywood.

- The Harmonized Tariff Schedule ("HTS") categories for plywood placed on the record represent basket categories containing all grades of plywood including expensive, Grade A decorative plywood used for cabinets and furniture as well as low end Grade D plywood used for flooring and other structural applications.

- Fast growing woods like eucalyptus, used almost exclusively for non-decorative, structural applications, and are much less expensive than show growing hardwoods like oak, cherry and walnut.

- Eucalyptus is one of the lowest priced hardwood species in the world, especially in China and Brazil, where they are harvested at a young age and are not free of knots and therefore cannot produce A or B grade veneers.

- That Baroque uses Eucalyptus, Grade D or Grade C/D plywood based on review of photos of Baroque's plywood and interviews with employees.

To the extent there was any doubt, Baroque reported that it purchased Eucalyptus plywood. APPX281-313, 318-769. Thus, Baroque's reporting and its experts establish that Baroque's production used low-quality, low-priced plywood made from eucalyptus veneers.

## C. The Data Most Product-Specific to Baroque's Plywood Purchases is ITTO C/CC Data

The data on record that is most comparable to Baroque's purchases of C/D grade plywood is the plywood covered by the ITTO C/CC grade price data. ITTO prices are the only plywood prices on the record that identify grade, with the ITTO C/CC data being the narrower and more reflective of the input actually used by APPX325-327.

In contrast, UN Comtrade data are basket categories encompassing all grades of plywood, including higher-priced A and B decorative plywood. See Petitioner Benchmark Data at 2 and Exhibit 3, APPX180-258. By averaging undifferentiated UN Comtrade data with ITTO data, Commerce incorporated high-priced grade A/B that is not comparable to Baroque's inputs, thereby artificial inflating the benchmark and distorting the LTAR calculation. Per Commerce's prior decisions in *Solar Cells from China* and *MLWF from China*, the more specific data should have been utilized by Commerce as the sole benchmark price for plywood.

## D. Commerce's Conclusion that Baroque Failed to Provide Sufficient Documentation of Its Grade C/D Plywood Purchases is Unsupported by Substantial Evidence

Commerce's conclusion that Baroque failed to provide sufficient documentation of its grade C/D plywood purchases is unsupported by substantial record evidence. Commerce claimed in the *Final IDM* that Baroque "failed to

provide sufficient documentation" demonstrating that its plywood purchases consisted only of grade C/D plywood, and further asserted that the expert statements only "may be reflective of the industry as a whole," rather than Baroque's own purchases. APPX1054-1062.

The expert reports submitted by Baroque, however, were not general market commentary. Both experts reviewed Baroque's production materials and expressly tied their conclusions to Baroque's specific plywood inputs. APPX750-769. No record evidence A-grade or B-grade plywood among Baroque's inputs, and Commerce did not cite any contradictory documentation suggesting that higher-grade plywood was used in Baroque's production of subject merchandise.

Further, Commerce erroneously claims that Baroque "did not provide any official company documentation to demonstrate that its plywood input is limited to a particular grade" and that "{Baroque} only provides witness statements, which may be reflective of the industry as a whole, but which do not represent dispositive evidence of the type of input used by Riverside in particular, and which do not tie to any of Riverside's documentation in this review." APPX 1054-1062. Baroque's reported purchases, confirmed by experts, eviscerates Commerce's stated rationale.

Commerce is also incorrect that "there is nothing on the record that demonstrates that different grades of plywood cannot be used to produce subject merchandise." APPX1054-1062. Uncontroverted expert witness statements

establish that the higher grades of plywood are not used to produce subject merchandise: "Slow growing hardwoods – like oak, cherry and walnut that are desired for their appearance and hardness for use in cabinetry and furniture – are much more expensive than fast growing woods like eucalyptus which is used almost exclusively for non-decorative, structural applications." APPX750-769.

Further, contrary to Commerce's suggestion, Baroque's submission of expert statements that include industry-wide information does not disqualify this evidence from consideration. Initially, that industry-wide information is included for context does not invalidate the expert's statements about the specific inputs used by Baroque. Further, Commerce itself has relied on reports from experts in benchmark calculations. *See, e.g, Archer Daniels Midland Co. v. United States*, 779 F. Supp. 3d 1349, 1357 (Ct. Int'l Trade 2025) (in narrowing the benchmark to the igneous reserves produced by the respondent, Commerce "found that record information demonstrates that the production processes for phosphate rock from sedimentary reserves and igneous reserves differ. To support this conclusion, Commerce relied on a report from Professor Petr Ptacek which identified different steps to mine and beneficiate each type of ore").

Commerce failed to meaningfully and accurately analyze the evidence submitted by Baroque. An objective review of record evidence renders Commerce's decision unsupported by substantial evidence.

### E. The CIT Erred in Upholding Commerce' Calculation of the Benchmark Price for Plywood for Baroque

The CIT erred in upholding Commerce's calculation of Baroque's benchmark price for plywood. The CIT cited Baroque counsel's admission that "none of Baroque's actual purchase documents specify what grade the different plywood should be." APPX13. The CIT concluded that "although Exhibit TS-4 does specify the grade of plywood purchased, the grades listed are not consistent with Baroque's assertion that its plywood purchases were limited to C/D grade." *Id.,* (citing GDLSK Letter regarding Riverside and Baroque's Third Supplemental Response (Mar. 9, 2021) at Ex. TS-4). APPX770-901.The record, however, established that Baroque's purchases are Eucalyptus. APPX281-313, 765-901. The expert confirmed that Eucalyptus is C/D grade plywood. Thus, the record is complete in identifying Baroque's plywood inputs as C/D grade plywood.

Neither Commerce nor the CIT can dismiss or ignore uncontroverted record evidence simply because complete information is spread over multiple record entries. Further, Commerce did not identify any evidence to the contrary. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Accordingly, this Court should remand Commerce's benchmark decision for Commerce to exclude the UN Comtrade data.

### III. The Court of International Trade Erred in Affirming Commerce's Use of the 17 percent VAT rate in Benchmarks

Commerce's use of the 17 percent VAT rate to calculate benchmark prices for LTAR input calculations for the entire POR is not supported by substantial evidence or in accordance with law. In the *Final Results*, the Department constructed the benchmark for veneers, plywood, fiberboard, glue and paint by adding a 17 percent VAT tax to the price throughout the POR, instead of 16 percent for May through December 2018, based upon the GOC statement that VAT was 17 percent during the POR. APPX1079-1080. Commerce, in the *Final Results*, blamed Baroque for a deficiency in its responses that Commerce had not previously identified or provided an opportunity to remedy. Thus, this Court should remand for Commerce to provide Baroque an opportunity to remedy the deficiency Commerce waited to identify in the *Final Results*. Record evidence establishes that the VAT rate for inputs paid by Baroque was reduced from 17 percent to 16 percent in May 2018 for the remainder of the POR. Baroque submitted purchase worksheets for each input as well as the invoices showing 16 percent VAT. APPX138-179.

Commerce acknowledged that Baroque "reported paying 16 percent VAT" and "submitted sample VAT invoices with 16 percent VAT," but stated that Baroque failed to offer an explanation "as to why Baroque's reported VAT rate ... differed from the VAT rate provided in the GOC's response." APPX1079-1080. The GOC – the authority responsible for setting the VAT rate – submitted VAT

and import tariff rates in effect for veneers, plywood, cut timber, fiberboard, glue and paint in 2018, and certified the accuracy of its response, thus presenting a conflict in record evidence. APPX1079-1080.

Commerce did not, however, identify a deficiency in Baroque's responses or provide Baroque an opportunity to explain the conflict in record evidence, as required by 19 U.S.C. § 1677m(d). Despite not providing Baroque an opportunity to remedy the conflict in record evidence, Commerce pointed to Baroque deficient submissions to justify using the 17 percent VAT rate.

Commerce asked Baroque to report all of its purchases of plywood, fiberboard, sawn wood and continuously shaped wood, and particleboard in an Excel template. APPX 66-137. Commerce subsequently asked Baroque to clarify and provide more specificity regarding its earlier submission:

> 16. In Exhibit 21b of your IQR, you provided Riverside Plywood's plywood purchases. Please provide an electronic worksheet for Riverside Plywood's plywood purchases in Excel format and include all formulas in your worksheets.

APPX151.

Commerce applied the 17 percent VAT rate in the *Preliminary Results* APPX1079, so Baroque argued in its case brief that Commerce has accepted the intra-year change in the VAT rate in other proceedings. *See, e.g., Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 8821

(Feb. 18, 2020), IDM, cmt.15 ("The appropriate VAT rates were 17 percent prior

to May 1, 2018, and 16 percent on and after May 1, 2018").  Commerce, however,

noted that the "2018 Chinese VAT regulation referenced by Riverside is not on the

record of this CVD review." APPX1080. Commerce thus concluded that "in the

absence of any evidence supporting Riverside's assertion, and in accordance with

the information reported and certified by the GOC in this review, we are

continuing to use the 17 percent VAT rate in the benchmark for the veneers,

plywood, fiberboard, glue, and paint LTAR program benefit calculations."

APPX1079-1080

        According to the CIT, however, Commerce did not conclude that Baroque's

submissions were deficient pursuant to Section 1677m(d) but rather that the GOC

provided more reliable information as to the VAT rate in place during the POR.

Thus, the CIT upheld Commerce's decision to apply the 17 percent VAT rate as

supported by substantial evidence and in accordance with law. *See* Slip Op. at 18.

APPX18.

        But Commerce did not state in the *Final Results* that the GOC information

was more reliable. Commerce pointed specifically to the lack of explanation by

Baroque for its payment of VAT at 16 percent to justify the decision to use the 17

percent VAT rate reported by the GOC. APPX1079-1080. Commerce found

Baroque's submission deficient and did not provide Baroque notice or an opportunity to remedy that deficiency.

Section 1677m(d) requires that if Commerce *"determines that a response to a request for information does not comply* with the request," Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d). Thus, the CIT erred in upholding Commerce's determination on grounds not articulated by Commerce.

Commerce's explanation for rejecting Baroque's arguments regarding the VAT rate change was a deficiency in Baroque's responses. Commerce's decision is thus not in accordance with law because Commerce failed to provide notice and an opportunity for Baroque to remedy the deficiency. Accordingly, to the extent Commerce previously recognized the reduction in VAT from 17 percent to 16 percent in *Threaded Rod from China*, this Court should remand the case for Commerce to provide the opportunity to remedy the deficiency Commerce identified for the first time in the *Final Results*.

## IV. The CIT Erred in Concluding that Commerce's Application of AFA in Finding Use of the EBCP by Baroque is Supported by Substantial Evidence and in Accordance with Law

Finally, Commerce's decision to apply AFA to the Government of China ("GOC") for its perceived failure to submit requested information relating to the

EBCP, and not to accept Baroque's complete response to Commerce's request for information, is not supported by substantial evidence or in accordance with law. The CIT erred in affirming Commerce's use of AFA regarding Baroque's use of the EBCP, failing to hold Commerce accountable for Commerce's lowered requirement of respondents to demonstrate non-use of the EBCP program. Thus, this Court should remand for Commerce to accept Baroque's responses as sufficient to establish non-use, or identify a deficiency and allow Baroque an opportunity to remedy the deficiency.

Commerce's finding that the GOC did not fully cooperate should not have been the end of the analysis. Commerce should have accepted Baroque's response regarding non-use because Baroque provided complete information in response to Commerce's request for information. Instead, Commerce improperly penalized Baroque based upon the GOC's non-response. Commerce is required to consider all record evidence of non-use. To the extent that Commerce determined that Baroque's response was deficient in not providing a full set of non-use certifications, it was required to provide Baroque an opportunity to remedy the deficiency before resorting to AFA.

Both Baroque and Jiangsu Senmao challenged Commerce's use of AFA with regard to the EBCP before the CIT. The CIT affirmed Commerce's EBCP determination depending on whether each plaintiff had submitted non-use

certifications from all of their U.S. customers. The CIT affirmed Commerce's

application of adverse facts available with respect to Baroque only because

Baroque submitted sample certifications, not certifications for all its U.S.

customers. But the CIT should have found that Commerce failed to provide an

opportunity to remedy any deficiency before resorting to adverse facts available for

Baroque. Commerce is required under 19 U.S.C. § 1677m(d) to identify

deficiencies and provide an opportunity to remedy a deficiency.

Baroque maintains that there is no deficiency. Commerce's initial question to

Baroque regarding the EBCP did not require non-use certificates from Baroque's

customers to establish non-use, only an explanation of "the steps {Baroque} took

to determine that no customer used the Buyer Credit Facility":

**Baroque Initial Questionnaire Response**

> 2.    Please discuss in detail the role your company plays in assisting your
> customers in obtaining buyer credits. Please provide a separate discussion
> for each type of assistance provided to your customers during the POR.
> Provide complete copies of documentation you provided to the China Ex-Im
> in order to assist your customers in obtaining buyer credits (provide this
> documentation for one sample transaction for each type of assistance
> provided to our customers during the POR).
>
> *If you claim that none of your customers used buyer credits during the POR,*
> *please explain in detail the steps you took to determine that no customer*
> *used the Buyer Credit Facility.*

APPX90 (emphasis added). In its response to this question, Baroque provided the

explanation Commerce required, both explaining that it contacted all its customers

36

and confirmed non-use and additionally providing sample non-use certificates even though they were not required:

> **Response**: Neither Riverside Plywood's nor Baroque Timber's customers used this program and the companies have never been in contact with China Ex-Im regarding this program. Because Riverside Plywood's and Baroque Timber's export customers could not obtain Export Buyer's Credits from China ExIm bank, or any other partner bank, without Riverside Plywood and Baroque Timber's direct cooperation and involvement. Since neither Riverside Plywood nor Baroque Timber have ever been approached by their customers or by China ExIm bank regarding the Export Buyer's Credit, they have direct knowledge that their export customers have not used this program. Nevertheless, the companies also contacted their U.S. customers and confirmed that they did not use the program. Please see **Exhibit 11c.**

APPX90. Baroque provided all the information Commerce required and more.

Baroque's explanation and sample non-use certifications are not controverted by other record evidence, as the CIT acknowledged. APPX25-26.

To the extent Commerce's questions did not lower the burden on respondents to prove non-use by asking only for an explanation, Commerce was statutorily obligated to provide Baroque an opportunity to remedy any deficiency before resorting to AFA. Commerce's initial question regarding the use of EBCP was ambiguous and did not specifically seek non-use certifications. This Court previously held that Commerce should verify non-use certifications before dismissing them but did not prevent Commerce from accepting less rigorous proof. *See, e.g., Changzhou Trina Solar Energy Co. v. United States*, No. 17-00198, Slip Op. 19-137, 2018 WL 5856438, at *4 (Ct. Int'l Trade Nov. 8, 2019) ("The court

cannot sustain Commerce's determination that verification would be impossible or unduly onerous. Although Commerce has shown that the GOC failed to failed to answer certain questions regarding the EBCP's operation, it is still not entirely clear to the court that the missing information is required to effectively verify respondent's non-use of the program. In order to avoid unnecessarily impacting cooperating parties because of the GOC's failure to cooperate, Commerce needs to at least attempt to verify the certifications of non-use in this case.").

When cooperative respondents have provided evidence of non-use of the EBCP, the Court has rejected Commerce's attempts to apply AFA to those respondents due to the GOC's alleged failure to provide requested information regarding the EBCP. *See, e.g., Zhejiang Junyue Standard Part Co. v. United States, No. 20-00102, 2022 WL 1701942* (Ct. Int'l Trade May 19, 2022); *Dalian Meisen Woodworking Co. v. United States*, No 20-00110, 2022 WL 1598896 at *8-9 (Ct. Int'l Trade May 12, 2022). Additionally, the Court has repeatedly remanded EBCP-related cases back to Commerce to conduct verification before rejecting the respondent's proof of non-use. *See, e.g., Risen Energy Co. v. United States*, No. 20-03912, 2022 WL 1499716 (Ct. Int'l Trade May 12, 2022).

To the extent that Commerce did not intentionally lower the standard for proving non-use, but instead found Baroque's response and its sample documentation deficient, Commerce is required to provide Baroque notice and an

opportunity to remedy the deficiency under 19 U.S.C. § 1677m(d). *China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1355 (Ct. Int'l Trade 2003) ("Before resorting to facts available, however, the Department is required to comply with the notice and remedial requirements of §1677m(d).").

Neither Commerce nor the CIT can short circuit Commerce's statutory obligations regarding the application of AFA. Thus, this case should be remanded to Commerce, to either accept Baroque's explanation and sample certificates of non-use, or to identify a deficiency in Baroque's response and provide Baroque an opportunity to remedy the deficiency.

## CONCLUSION

For the foregoing reasons, Baroque respectfully requests that this Court reverse the judgment of the Court of International Trade and remand with instructions that Commerce recalculate the benchmark for plywood, apply the correct VAT rate, and find that the Export Buyer's Credit Program was not used during the period of review.


Respectfully submitted,                          Respectfully submitted,

/s/Irene H. Chen                                 /s/Mark Lehnardt
Irene H. Chen, Esq.                              Mark Lehnardt, Esq.
VCL Law LLP                                      Davis & Leiman, PLLC
1945 Old Gallows Rd., Ste 260                    1025 Connecticut Ave., N.W., Ste 1012
Vienna, VA  22182                                Washington, DC  20036

Tel: (301) 760-7393                    Tel : (202) 642-4850
Email: ichen@vcllegal.com              Email : mlehnardt@dltrade.com

Attorneys for Plaintiffs-Appellants

February 26, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Opening Brief of Plaintiffs-Appellants Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation, complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 8564 words.

/s/ Irene H. Chen
Irene H. Chen

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2026, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Irene H. Chen
Irene H. Chen